# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

---

**JAMES HOUCK**
Kettle Moraine Correctional
PO Box 31, Plymouth, WI  53073,

|  |  |
|---|---|
| Plaintiff, | **FEDERAL COMPLAINT** |
| v. | Court Case No. 26-cv- |

**WALWORTH COUNTY**,
by **DAVID GERBER**, Walworth County Sheriff,
Walworth County Jail Superintendent **STEVE SAKS**,
**HEATHER KOPYDLOWSKI, RN**,
1770 County Route NN, Elkhorn, Wisconsin, and
**SOUTHERN HEALTH PARTNERS**,
2030 Hamilton Place Blvd, Suite 140, Chattanooga, TN 37421

Defendants.

---

NOW COME the above-named Plaintiff, **JAMES HOUCK**, by and through his attorney,

**WALTER W. STERN III,** and as for an action under the United States Constitution,

particularly the 14th Amendment to the United States Constitution, together with his claims for

relief against the above-named Defendants, alleges and shows the Court as follows:

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises

   under the United States Constitution and Laws of the United States, and pursuant to

   28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under

   color of state law, of Plaintiffs' civil rights.

**VENUE**

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside or do business in this district and because the events and omissions giving rise to Plaintiff's claims occurred within this district.

**PARTIES TO THE ACTION**

3.     Plaintiff JAMES HOUCK (hereinafter "HOUCK") is a citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, HOUCK was a pre-trial detainee at the Walworth County Jail and was entitled to all rights, privileges, and immunities accorded all residents of the State of Wisconsin, and citizens of the United States, pursuant to the Constitution of the United States of America.

4.     HOUCK's serious medical and psychological needs were deliberately ignored and neglected while in custody at Walworth County Jail, under the care/control of Superintendent Steve Saks ("SAKS"), which the Plaintiff relied upon to provide adequate medical and psychological care. As a result of the deliberate indifference of the Defendants, HOUCK sustained serious physical injuries, exacerbating his mental health issues.

5.     Defendant WALWORTH COUNTY, under the administration of Sheriff DAVID GERBER, with offices located at 1770 County Route NN, Elkhorn, Wisconsin, is a government entity operating under the laws of the State of Wisconsin. Defendants WALWORTH and GERBER established, operated and maintained the Walworth County Jail ("the Facility") and, at all times material hereto, Defendants

Page **2**

WALWORTH and GERBER were responsible for the creation and implementation of policies and procedures at the Facility, ensuring that pre-trial detainee's medical needs were not ignored.

6. Defendant Steve Saks ("SAKS") is the Superintendent of the Walworth County Jail and in said capacity is responsible for the training and supervising the employees of the Facility, the functional operation of the Facility and ensuring that the pre-trial detainees housed therein are safe and treated in a humane manner with regard to serious healthcare issues.

7. Defendant SOUTHERN HEALTH PARTNERS ("SHP"), a foreign corporation with an office address of 2030 Hamilton Place Blvd, Suite 140, Chattanooga, TN 37421, at all times pertinent hereto, provided medical staffing to the Facility to provide competent and sufficient health care services to pre-trial detainees in the Facility, including HOUCK.

8. Defendant RN HEATHER KOPYDLOWSKI, at all times pertinent hereto, was the Head of the Health Services Unit ("HSU") at the Facility, and was acting in her individual capacity and as agent for the Facility, or in her capacity as a healthcare provider through SHP.

9. At all times material hereto, all individual Defendants were acting in the course of their employment, under color of state law, were deliberately indifferent to the Constitutional and statutory rights of HOUCK, and are sued in their individual capacities.

**FACTS**

10. On February 3, 2023, HOUCK became an inmate at the Facility and was housed in said Facility through April 25, 2023 when he was transferred to Dodge Correctional.

11. That on or about February 11, 2023, while in the shower, HOUCK noticed a "bubble" on the front of his right ankle on which he had previously had surgery. The area was also reddish purple in color.

12. Houck immediately notified the on duty correctional officer and said officer contacted the HSU staff. A nurse with the initials "gj" noted on Wound Care Flow Sheet that the area was red, swollen and with slight warmth. A copy of the complete Wound Care Flow Sheet from 2/11/23 through 3/4/23 is attached hereto and made a part hereof and marked **Exhibit "A."**

13. On February 15, 2023, HOUCK had an appointment with his physician, Dr. Daniel Allison, who was concerned about the condition of his right ankle and ordered an x-ray.

14. On February 16, 2023, Dr. Yasser Mir conducted an x-ray, which Radiology Report concluded that a CT scan should be ordered for further medical evaluation of his right ankle. A copy of said Report is attached hereto as **Exhibit "B."**

15. Despite the conclusions contained in the Radiology Report, no further medical intervention was explored regarding HOUCK's ankle and his continued pain.

16. HOUCK continued to express his concern about his ankle to the Facility staff, particularly Heather Kopydlowski, RN, the Head of the HSU at the Facility.

17. Despite his continual pleas for medical intervention to determine why his ankle was still red, swollen, and painful – and for the Facility to schedule a CT scan, as

Page **4**

recommended by Dr. Mir – HOUCK received nothing except as indicated on the Wound Care Flow Sheet.

18. HOUCK repeatedly asked the Facility to arrange for an orthopedic surgeon to examine his ankle as he had been verbally advised during the reading of his Radiology Report; he also asked for an infectious disease specialist as his ankle was not improving over the entire period HOUCK was an inmate at the Facility through April 25, 2023. All requests were either ignored or denied by the Facility.

19. HOUCK also requested another appointment with his physician, Dr. Daniel Allison, so that Dr. Allison could order a CT scan and orthopedic consult.  Defendant RN Heather Kopydlowski repeatedly refused HOUCK's requests and even stated on one occasion "we are not doing anything."

20. Additionally, HOUCK's attorney at the time, Larry Steen, together with Walworth County Chaplain Larry Hansen, both urged SAKS, in person, to provide appropriate medical care to HOUCK and advised of the dangers of infection and subsequent medical complications.  SAKS ignored their requests and no additional medical care was provided to HOUCK during his incarceration at the Facility.

21. True to their word, the Facility did not attend to HOUCK's serious ankle issue, leading to prolonged infection, serious pain and suffering, discussion of amputating the ankle and other complications that continue to this day.

22. HOUCK was transferred to Dodge Correctional on April 25, 2023.  For reasons unknown, the Facility did not advise Dodge of HOUCK's pre-existing ankle condition, nor what antibiotic had been prescribed at the Facility.  The Health

Transfer Summary is attached hereto and made a part hereof and marked **Exhibit "C."**

23. HOUCK asserts that Defendant RN Heather Kopydlowski was deliberately indifferent to his medical needs by not disclosing his right ankle issues, nor what antibiotics he had been described, in the Health Transfer Summary she signed upon his transfer to Dodge.

24. As a result of the Facility, and specifically Defendant Kopydlowski, not supplying Dodge with important medical information, the infection in HOUCK's ankle festered for another nine (9) months, exacerbating his osteomyelitis, a serious bone infection, and necessitating additional medical care.

25. That Defendants, either individually or through their agents and/or employees, were deliberately indifferent to serious medical and psychological needs and intentionally deprived HOUCK of medical treatment and acted with reckless disregard of HOUCK's serious medical and mental health conditions, which were clearly evident, in violation of his 14th Amendment rights under the United States Constitution.

26. That the conduct of Defendants, either individually or through their agents and/or employees, were committed while acting under color of state law, and deprived HOUCK of his clearly established rights, privileges, and immunities, in violation of the and 14th Amendment to the United States Constitution, and of 42 U.S.C. § 1983.

27. That Defendants, either individually or through their agents and/or employees, deprived HOUCK of his individual rights, as follows:

a. Deliberately failing to properly train the Facility staff, including medical personnel providing medical care to residents therein, to properly assess and determine an inmate's need for medical treatment;

b. Deliberately failing to seek appropriate medical attention for HOUCK's complaints regarding his right ankle;

c. Deliberately failing to hire, train, maintain, and implement competent medical staff at the Facility;

d. Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the medical staff at the Facility, thereby encouraging the indifference and omissions complained of herein;

e. Deliberately allowing a custom and/or practice at the Facility of deliberately ignoring HOUCK's complaints regarding his need for medical or mental health attention; and

f. Deliberately, willfully, and wantonly failing to ensure that the Facility provided appropriate medical care as specified in medical documentation.

28. Based on the above-alleged facts, it is apparent that the Defendants, either individually or through their agents and/or employees, engaged in a habit, custom and routine practice of jeopardizing the physical and mental health of inmates, which imposes liability upon them as an entity because the deliberate indifference was a proximate cause of HOUCK'S injuries.

29. That Defendants, either individually or through their agents and/or employees, participated in deliberate indifference to the medical needs of HOUCK, specifically,

Page **7**

Defendant Kopydlowski, not attending to HOUCK's complaints regarding his ankle pain in a sufficient or timely manner.

30. The above acts and omissions of the Defendants, either individually or through their agents and/or employees, constitute a course of conduct and failure to act amounting to willful, wanton and deliberate indifference to the rights, health, safety, and welfare of HOUCK, and those similarly situated, resulting in the deprivation of his due process rights, pursuant to the 14th Amendment to the United States Constitution.

31. That the conduct of the Defendants, either individually or through their agents and/or employees, was a proximate cause of HOUCK's physical and mental injuries, justifying an award of compensatory damages determined by the Jury.

32. That the Defendants' collective willful disregard for Plaintiff's health and well-being, their deliberate indifference to Plaintiff's medical needs warrant the award of punitive damages.

   **WHEREFORE**, Plaintiff respectfully demands judgment against the Defendants, jointly and severally, as follows:

   1. An award of compensatory damages determined by the Jury;

   2. An award of punitive damages determined by the Jury;

   3. An award of attorneys' fees and costs, pursuant to Title 42 U.S.C. 1988, as awarded by the Court;

   4. Any other further relief as this Honorable Court deems just and equitable.

   **THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

Dated this 4th day of April, 2026

By:    s/ *Walter W. Stern III*

ATTY. WALTER W. STERN, III
Bar No. 1014060
920 85th St., Suite 123
Kenosha WI 53143
**Phone:** (262) 880-0192
**Fax:** (262) 997-1101
**Email:** wwstern111@gmail.com